ANTONIO BARNEVO, Respondent, *v.* MUNSON STEAMSHIP
LINE et al., Appellants.

Appeal — whether theory of legal liability of defendants
was properly stated to jury a question of law which survives
unanimous affirmance — ships and shipping — master and
servant — negligence — distinction between duty of charterer
under demise of a ship and mere contract for cargo space —
erroneous charge that charterer was in possession of ship —
injury to employee of stevedore while unloading — erroneous
refusal to charge as to duty of inspection — court bound to
explain what would constitute a proper inspection.

1. The question whether the theory of legal liability as to each
of two defendants was properly stated to the jury by the trial court,
when raised by proper exceptions to the charge and to refusals to
charge, survives unanimous affirmance.

2. Where the only evidence in the record to show the relation of
the charterer of a vessel to the unloading thereof is a provision in the
charter that " Nothing herein stated is to be construed as a demise
of the steamer to the Time Charterers, The Owners to remain
responsible for the navigation of the Steamer, insurance, crew and
all other matters, same as when trading for their own account," and
a further provision that " Charterers are to load, stow and trim the
cargo at their expense under the supervision of the captain," it is
error for the trial court, in an action by a longshoreman against the
charterer and his employer, the stevedore engaged in unloading the
vessel, to recover for injuries received during such unloading, to charge
that the charterer was in possession of the steamship for the purpose
of discharging the cargo and in substance refusing to charge that
under the charter party the owner and not the charterer was under
the legal duty of discharging the cargo. The distinction is material
between the duty of a charterer under a demise of the ship and under
a mere contract for cargo space. The charter, known as the govern-
ment charter, is not a demise, the officers and crew of the ship were
not the officers and crew of the charterer, and the jury should have
been so instructed.

3. Plaintiff having been injured through the giving way of a hatch
cover, the court instructed the jury that the test and measure of
proper care on the part of the stevedore was what a reasonably careful
and prudent employer would have done under the circumstances,

but refused to charge that unless there was something to excite a
suspicion of danger in the mind of a reasonable man there was no
duty on the part of the stevedore to remove the hatch covers.    This
was error.    The court was bound to explain what a proper inspection
would consist of; to state in substance that in the absence of any
condition to excite suspicion or to suggest defects or danger, the
stevedore might assume the safety of the appliances and that due
care had been used by the ship owner to keep and maintain them
in reasonably safe condition; that if appearances indicated no danger
or defects, an inspection for latent imperfections was not required of
him; that in the absence of indications of danger it would be unreason-
able to expect a stevedore minutely to examine the hatch, its covers,
beams and appliances, before permitting his employees to work on
them.    (*Liverani* v. *Clark & Son*, 231 N. Y. 178, followed.)

4. The fact that the stevedore discovered after the accident that
the fore and aft beam was not all right and that when the hatch covers
were on it, it was bending some in the center, did not change his right
to have the jury consider the question of his negligence under proper
instructions as to the specific duty of inspection.

*Barnevo* v. *Munson Steamship Line*, 209 App. Div. 882, reversed.

(Argued January 30, 1925; decided February 25, 1925.)

APPEAL, by permission, from a judgment of the Appel-
late Division of the Supreme Court in the second judicial
department, entered June 7, 1924, unanimously affirming
a judgment in favor of plaintiff entered upon a verdict.

*G. Everett Hunt* and *Grattan B. Shults* for Munson
Steamship Line, appellant.    The charterer of a vessel
under a government time charter is not responsible for
the maintenance and care of the vessel.    (*Luckenbach* v.
*Insular Line,* 186 Fed. Rep. 327; *Clyde Commercial
Steamship Co.* v. *West India Steamship Co.*, 169 Fed.
Rep. 277; *The Claveresk*, 264 Fed. Rep. 276; *The Volund,*
181 Fed. Rep. 643; *Reed* v. *United States,* 78 U. S. 591;
*United States* v. *Shea*, 152 U. S. 178; *Munson S. S. Line*
v. *Glasgow Nav. Co.*, 235 Fed. Rep. 64.)

*E. C. Sherwood* and *William L. O'Brion* for Frank
Apuzzo, appellant.    The appellant Apuzzo was under
no duty to remove the hatch planks and inspect the fore

and aft beam and its supports. (*Liverani* v. *Clark &
Son*, 231 N. Y. 178; *McCabe* v. *Turner & Blanchard, Inc.*,
197 App. Div. 859; *Dziengelewsky* v. *Turner & Blanchard,
Inc.*, 191 App. Div. 341; *Groonstad* v. *Robins D. D. Co.*,
201 App. Div. 581; *Moynihan* v. *Kings Windsor C. D.
Mortar Co.*, 168 Mass. 450; *Kirk* v. *Sturdy,* 187 Mass. 87.)
Exceptions to the charge and to refusals to charge present
reversible error. (*Liverani* v. *Clark & Son*, 231 N. Y.
178; *McCabe* v. *Turner & Blanchard, Inc.*, 197 App. Div.
859; *Dziengelewsky* v. *Turner & Blanchard, Inc.*, 191 App.
Div. 341; *Groonstad* v. *Robins D. D. Co.*, 201 App. Div.
581; *O'Malley* v. *R. R. Co.*, 210 Mass. 344; *Moynihan* v.
*Kings Windsor C. D. Mortar Co.*, 168 Mass. 450; *Kirk* v.
*Sturdy*, 187 Mass. 87.)

*Thomas Cradock Hughes* for respondent. The defend-
ant Apuzzo was negligent because he did not take the
care required by law to rpotect the plaintiff while the
latter was employed. (*Eastland* v. *Clarke*, 165 N. Y. 427;
*Maher* v. *Atlantic Stevedoring Co.*, 199 App. Div. 630;
*O'Brien* v. *Luckenbach S. S. Co.*, 299 Fed. Rep. 170;
*McCabe* v. *Turner & Blanchard, Inc.*, 197 App. Div.
859; *Groonstad* v. *Robins D. D. Co.*, 201 App. Div. 581;
*Port of N. Y. S. Corp.* v. *Castagna*, 280 Fed. Rep. 618.)
The duty of unloading the vessel devolved upon the appel-
lant Munson Steamship Line, which is liable to the plain-
tiff for the injuries sustained by him. (*Anderson* v. *Boyer*,
156 N. Y. 93; *Rosenstein* v. *Vogemann*, 184 N. Y. 325.)

Pound, J. Plaintiff was a longshoreman in the employ
of defendant Apuzzo, who was a stevedore. While the
stevedore was unloading, at the Arbuckle Building, Brook-
lyn, a cargo of sugar from the vessel *O. A. Knudson*,
which had been chartered by the defendant Munson
Steamship Line, under a charter party known as a " time
charter, government form," plaintiff sustained injuries.
He brought action to recover damages, alleging that
defendants owed him, among other duties, the duty of

inspecting the vessel before putting him at work on it, which they negligently omitted to discharge. The accident happened while plaintiff and his fellow-workmen, under the direction of Apuzzo's foreman, were putting in place a hatch cover which gave way and went into the hold. It then appeared that the fore and aft beam which supported the hatch did not rest securely in its grooves or sockets because the ends of the beam were worn away and splintered. We may assume the existence of a question of fact as to whether the defect was obvious when the hatch cover was in proper position.

Both defendants allege error in the submission of the case to the jury and the question of law is not whether on the facts submitted to the jury negligence was established, but whether the theory of legal liability as to each defendant was properly stated to the jury by the trial court. This question being raised by proper exceptions to the charge as made and to the refusals to charge as requested, survives the unanimous affirmance. (*McGuire v. Bell Telephone Co.,* 167 N. Y. 208.)

The appellant Munson Steamship Line complains because the court charged the jury that it was in the charge and possession of the steamship for the purpose of discharging the cargo and in substance refused to charge that under the charter party the owner and not the charterer was under the legal duty of discharging the cargo. Looking at the evidence as we may to determine the pertinency of the exceptions (Cardozo on Jurisdiction, 103) we find that the only evidence in the record to show the relation of Munson Steamship Line to the unloading of the vessel is the charter party, which provides:

" 25. Nothing herein stated is to be construed as a demise of the steamer to the Time Charterers, The Owners to remain responsible for the navigation of the Steamer, insurance, crew and all other matters, same as when trading for their own account."

It also provides, among other things, that " Charterers

[239 N. Y. 486]        Opinion, per POUND, J.                [Feb.,

are to *load*, stow and trim the cargo at their expense under the supervision of the captain." The complaint alleges that at the time of the accident the steamship was in charge of officers and a crew who were the agents and servants of defendant Munson Steamship Line. To establish this allegation, plaintiff was bound to prove that the charterer was responsible for the unloading.

The trial justice erred in stating the duty of the charterer on this record. The distinction is material between the duty of a charterer under a demise of the ship and under a mere contract for cargo space, and this distinction was ignored. In the main charge the court said that the steamship company had had the boat in its possession for some time prior to the accident and owed plaintiff the duty of making inspection of its condition. It did not have the boat in its possession. It was in the possession of the owner and his officers and crew. The charterer had the cargo on board, but it does not appear that it had, as matter of law, taken charge of the vessel, even for the purpose of unloading. The court refused to charge that the agreement between the charterer and the owners of the vessel was simply a lease of cargo space; refused to charge that there was not a demise of the ship from the owners to the charterer at the time the accident occurred, and held as matter of law, not, however, with entire consistency, that the vessel was leased by the charterer for the time stated in the charter party. The charter known as the government form, is not a demise; the officers and crew of the ship are not the officers and crew of the charterer. The jury should have been so instructed. (*Munson Steamship Line* v. *Glasgow Nav. Co.*, 235 Fed. Rep. 64.) We are, however, precluded from considering the evidence for the purpose of determining whether the propositions requested to be charged would logically have been fatal to the disposition of the motion for a nonsuit or for direction of a verdict. (*McGuire* v. *Bell Telephone Co., supra.*)

The defendant Apuzzo, the master stevedore, an independent contractor, complains of the generality of the charge. The court instructed the jury that the test and measure of proper care on his part was what a reasonably careful and prudent employer would have done under the circumstances.

The following request and ruling were thereupon made and an exception taken:

" Mr. Clark: I ask your Honor to charge the jury that unless there was something in that part of the hatch or the hatch cover or the beams supporting it to excite a suspicion of danger in the mind of a reasonable man, there was no duty upon the part of the defendant Apuzzo to remove the hatch covers.

" The Court: Unless there was something there which a reasonable man could discover upon inspection then there could be no liability on the part of the defendant Apuzzo."

This ruling was erroneous under the rule laid down by this court in *Liverani* v. *Clark & Son* (231 N. Y. 178). The court was bound to explain what a proper inspection would consist of; to state in substance that in the absence of any condition to excite suspicion or to suggest defects or danger, the stevedore might assume the safety of the appliances and that due care had been used by the ship owner to keep and maintain them in reasonably safe condition; that if appearances indicated no danger or defects, an inspection for latent imperfections was not required of him; that in the absence of indications of danger it would be unreasonable to expect a stevedore minutely to examine the hatch, its covers, beams and appliances, before permitting his employees to work on them. The fact that the defendant Apuzzo discovered after the accident that the fore and aft beam was not all right and that when the hatch covers were on it, it was bending some in the center, did not change his right to have the jury consider the question of his negligence

under proper instructions as to the specific duty of inspection. The distinction is clear between a negligent manner of doing the work and negligence in inspecting the vessel before the work is done. The question was whether Apuzzo discharged the specific duty of inspection resting on him before putting his men to work. In cases where the law has detailed the duty resting on a reasonably prudent man, general instructions are inadequate. As in railroad crossing cases, where the duty of a reasonably prudent man is to look and listen for the approach of trains before going on the crossing, so here defendant was entitled to have the jury consider the legal test of prudence. The exceptions present substantial and reversible error.

The judgments should be reversed, and a new trial granted as to both defendants, with costs to abide the event.

HISCOCK, Ch. J., CARDOZO, CRANE, ANDREWS and LEHMAN, JJ., concur; McLAUGHLIN, J., absent.

Judgments reversed, etc.