**William KERN and Dorothy Kern, Plaintiffs,**

v.

**FRYE COPYSYSTEMS, INC., Frye Industries, Inc., Wheelabrator–Frye Co., Frye Manufacturing Co., Impel Industries, Inc. and Pacific Industries, Inc., Defendants.**

No. 93 Civ. 0331 (RWS).

United States District Court, S.D. New York.

March 2, 1995.

Finkelstein, Levine, Gittelsohn & Tetenbaum, Newburgh, NY (George A. Kohl, of counsel), for plaintiffs.

Bigham Englar Jones & Houston, New York City (James S. McMahon, George S. Evans, Jr., of counsel), for defendants.

## OPINION

SWEET, District Judge.

Defendants Frye Copysystems, Inc. ("Copysystems") and Wheelabrator–Frye Co. ("Wheelabrator") have moved for summary judgment pursuant to Rule 56, Fed.R.Civ.P. against William Kern ("Kern") and Dorothy Kern (collectively the "Kerns").

For the reasons discussed below, Wheelabrator's motion with regard to the claims against it for breach of warranty and strict products liability are granted; its motion with respect to the claim of negligence against Copysystems is denied.

### The Parties

Copysystems is a manufacturer located in Newburgh, New York. Wheelabrator is its parent company.

Frye Manufacturing Co., Pacific Industries, Inc., and Impel Industries, Inc. are predecessors to Wheelabrator by way of mergers and name changes.

William Kern is a machine operator formerly employed by Copysystems. Dorothy Kern is his wife.

### Prior Proceedings

A related case, *Kern v. Roemer Machine and Welding Co.,* (91 Civ. 615), was originally brought in 1991 by these same plaintiffs against Roemer, the manufacturer of the machine at issue in this case. The defendant, Roemer, impleaded Copysystems as a third-party defendant. In an Opinion dated October 30, 1992, 820 F.Supp. 719, this Court granted summary judgment to Roemer finding that as the manufacturer of the machine it could not be held liable for claims premised on defective design. This effectively dismissed the action as originally brought.

Pursuant to a Summons with Notice and Verified Complaint, the Kerns instituted an action in Supreme Court, Orange County, against defendants in December 1992. The complaint sought damages for personal injuries sustained by Kern. On the basis of diversity of citizenship, this action was timely removed to this Court on January 19, 1993. Argument was heard on the present motion to dismiss on November 2, 1994. Submissions were received from the parties until November 2, 1994, and the motion was considered fully submitted as of that date.

### The Facts

This case is a personal injury action, including allegations of loss of consortium, stemming from an accident which occurred at Copysystems' Newburgh, New York plant. Kern was hired by Copysystems as a coating machine operator in 1983 and at the time underwent a one-month training period on the operation of such machines. On February 16, 1990, Kern, who had been employed full-time as a coating machine operator since 1983, was cleaning a pressure roll on a rotary coating machine (the "coating machine" or the "machine") with a rag while the machine was kept running. According to Kern, the rag was caught in the machine which dragged his hand between two pressure rolls, causing severe and permanent injuries to his right hand. Mr. Kern does not specifically

recall how the accident occurred, and there were no witnesses.

The design specifications, instructions and blueprints for the rotary coating machine were provided by Frye Manufacturing Company, and the machine was constructed according to those specifications in or about 1969 and 1970. Frye Manufacturing Company merged with Pacific Carbon & Ribbon Manufacturing Company in 1963 and became Frye–Pacific Carbon & Ribbon Manufacturing Company. This entity changed its name in 1965 to Impel Industries, Inc., ("Impel"), and Impel changed its name in 1967 to Frye Manufacturing Company ("Frye Manufacturing[2]"). Frye Manufacturing[2] merged with Pacific Industries, Inc. and became Frye Industries, Inc. Subsequently, in 1971 or 1972, Frye Industries, Inc. merged with other corporations and the resulting entity became the Wheelabrator–Frye Company. Thereafter, in 1972, Wheelabrator formed a subsidiary, Copysystems, which obtained all the assets of Wheelabrator's copy products division, including the rotary coater machine, in return for assuming all of the division's liabilities. To sum up, the succession of liability arising from the manufacture of the coater machine is Frye Manufacturing[2] to Frye Industries to Wheelabrator to Copysystems. Between 1984 and 1985, Copysystems made changes to up-grade the machine, including changing the machine's motors and replacing the control panel.

The Kerns' complaint alleges three causes of action against the defendants for negligence, breach of warranty, and strict products liability. Each claim is premised on the contention that the rotary coater machine was defectively designed because it failed to include a cover guard or dual-hand controls, which would prevent the type of accident that precipitated Kern's injuries, and that Wheelabrator and Copysystems are the successors in liability to the company that manufactured the machine, Frye Manufacturing Company.

Wheelabrator has interposed affirmative defenses alleging that the Kerns have failed to state a claim upon which relief may be granted and that any injuries sustained by Kern were caused by his own negligence and that he assumed the risk.

### The Motions

The defendants have moved for summary judgment, contending that they are immune from any common-law action by New York's Worker's Compensation Law §§ 11 and 29(6), that the Kerns' breach of warranty claim is time barred, and that the strict liability claim has no basis in law or fact. Defendant Wheelabrator further contends that if any liability is found, it must be attributable to its subsidiary, Copysystems; and a parent corporation may not be held liable for the acts of its subsidiary.

### Discussion

#### I. Standards for Summary Judgment

Summary judgment procedures, in accordance with Rule 56, facilitate the overall purpose of the Federal Rules of Civil Procedure, which are designed "to secure the just, speedy and inexpensive determination of every action." Fed.R.Civ.P. 1; *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986). Rule 56(c) provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513–14, 91 L.Ed.2d 202 (1986); *Moller v. N. Shore Univ. Hosp.*, 12 F.3d 13, 15 (2d Cir. 1993).

On a motion for summary judgment, all inferences to be drawn from the underlying facts and all doubts as to the existence of a genuine issue for trial must be resolved in favor on the party opposing the motion. *Brody v. Town of Colchester*, 863 F.2d 205, 210 (2d Cir.1988). If, when "[v]iewing the evidence produced in the light most favorable to the nonmovant ... a rational trier could not find for the movant, then there is no genuine issue of material fact and entry of summary judgment is appropriate." *Binder v. Long Island Lighting Co.*, 933 F.2d 187, 191 (2d Cir.1991). The substantive law iden-

tifies which facts are material, and "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510. In resolving a motion for summary judgment, a judge will not "weigh the evidence and determine the truth of the matter"; rather, the judge merely will "determine whether there does indeed exist a genuine issue for trial." *Id.* at 249, 106 S.Ct. at 2511.

The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying which materials "it believes demonstrate the absence of a genuine issue of for trial." *Celotex Corp.*, 477 U.S. at 323, 106 S.Ct. at 2553; *See Bay v. Times Mirror Magazines, Inc.*, 936 F.2d 112, 116 (2d Cir.1991). If a motion for summary judgment is properly made, the burden shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." Fed. R.Civ.P. 56(e); *Anderson*, 477 U.S. at 250, 106 S.Ct. at 2511. To defeat a motion for summary judgment, the non-movant must "do more than simply show that there is some metaphysical doubt as to the material facts" concerning those issues which the moving party has sustained its burden or those which the non-moving party itself bears the burden of proof. *Matushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). The non-movant must establish the existence of enough evidence such that a jury could return a verdict in his favor. *See Anderson*, 477 U.S. at 247–51, 106 S.Ct. at 2509–11. Entry of summary judgment indicates that under the governing law no reasonable jury could return a verdict for the losing party. *Coach Leatherware Co. v. AnnTaylor, Inc.*, 933 F.2d 162, 167 (2d Cir. 1991).

## II. *Assumption of Liability*

■ The general rule of successor liability is that a corporation which acquires the assets of another—the predecessor—is not liable for the torts of its predecessor, unless: (1) the successor expressly or impliedly as-

sumed such liability; (2) the transaction amounted to a consolidation or merger of the seller and purchaser; (3) the purchaser was a mere continuation of the seller; or (4) the transaction was entered into fraudulently for the purpose of escaping such liability. *Diaz v. South Bend Lathe Inc.*, 707 F.Supp. 97, 99–100 (E.D.N.Y.1989); *Schumacher v. Richards Shear Co., Inc.*, 59 N.Y.2d 239, 244–45, 464 N.Y.S.2d 437, 451 N.E.2d 195 (1983). As Wheelabrator correctly concedes, through the various mergers that led to its birth, it assumed the obligations and liabilities of Frye Manufacturing Company, Frye Manufacturing[2], Pacific Carbon & Ribbon Manufacturing Company, Pacific Industries, Inc., and Frye Industries, Inc., and those liabilities and obligations pertaining to Wheelabrator's copy products division were assumed by Copysystems when it obtained the assets of Wheelabrator's copy-products division. *See Schumacher*, 59 N.Y.2d at 244–45, 464 N.Y.S.2d 437, 451 N.E.2d 195; New York Business Corporation Law § 906(b)(3). Plaintiffs concede that Copysystems assumed all liabilities relating to the Frye Copysystems division of Wheelabrator–Frye. They further concede that Copysystems ultimately assumed the liabilities of the original Frye Manufacturing as a matter of law. Therefore, barring the introduction of evidence that would preclude the finding that Wheelabrator maintained liability for the claims involving the design of the machine at issue, Wheelabrator is absolved of all liability.

### (a) *Breach of Warranty*

■ The Kerns' claim for breach of warranty is barred by the applicable statute of limitations. This action was commenced in 1992. The rotary coater machine that caused the Kerns' injuries was delivered and installed in 1970. Under New York Law, a cause of action for breach of an express or implied warranty must be commenced within four years after it accrues. N.Y. U.C.C. § 2–725(1) (McKinney 1994); *Heller v. U.S. Suzuki Motor Corp.*, 64 N.Y.2d 407, 410, 488 N.Y.S.2d 132, 477 N.E.2d 434 (1985). In a suit against a manufacturer or distributor, the cause of action accrues on the date the party charged tenders delivery of the product. N.Y. U.C.C. § 2–725(2); *Heller*, 64

N.Y.2d at 411, 488 N.Y.S.2d 132, 477 N.E.2d 434; *Camillo v. Olympia & York Properties Co.*, 157 A.D.2d 34, 45, 554 N.Y.S.2d 532, 537 (1st Dept.1990). The Kerns do not contest that the statute of limitations has run and consequently, the Kerns's breach of warranty claim must be dismissed as a matter of law.

### (b) Products Liability

 Under New York Law, a manufacturer may be held liable for placing "into the stream of commerce" a defective product which causes injury. *Amatulli v. Delhi Const. Corp.*, 77 N.Y.2d 525, 532, 569 N.Y.S.2d 337, 571 N.E.2d 645 (1991). Wheelabrator contends that it cannot be held liable under the theory of strict products liability because the rotary coater machine that caused Kern's injuries was not placed in the stream of commerce, and was designed and utilized by the manufacturer for its own use. Relying on *Duffy v. Liberty Machine Co., Inc.*, (Orange Cty Ct. Index No. 56/59) plaintiffs argue that the law in New York is otherwise. Whatever particular facts in *Duffy* led the Orange County court to find to find the designer of its own product-line subject to a cause of action for products liability, the law in New York is that only those "regularly engaged in the business of manufacturing and selling" a product may be subject to a cause of action in strict products liability for injuries caused by that product. *Fadale v. Allegheny Ludlum Steel Corp.*, 139 A.D.2d 902, 528 N.Y.S.2d 238 (4th Dept. 1988); *see also Suhljian v. Charles Ross & Son Co.*, 69 N.Y.2d 89, 96–97, 511 N.Y.S.2d 821, 503 N.E.2d 1358; *Bickram v. Case I.H.*, 712 F.Supp. 18, 20 (1989); *Voss v. Black & Decker Mfg. Co.*, 59 N.Y.2d 102, 463 N.Y.S.2d 398, 450 N.E.2d 204 (1983). It is uncontroverted that the machine that caused plaintiff's injuries was designed for the manufacturer's own use. As a matter of law, the manufacturer could not be liable to the users of the machine in strict products liability.

### (c) Negligence

 There is nothing, however, to preclude the plaintiffs' claim against the Manufacturer in negligence. Plaintiffs' claims are based on negligent design for failure to install a nip-point guard or two-hand controls. To prevail on the theory of negligence, the plaintiffs must establish that the inherent dangerousness of the product's design at the time the product was marketed outweighed its utility, *Cover v. Cohen*, 61 N.Y.2d 261, 266–67, 473 N.Y.S.2d 378, 461 N.E.2d 864 (1984). Summary judgment is a drastic remedy that is not customarily afforded in issues of negligence. *Derdiarian v. Felix Contracting Corp.*, 51 N.Y.2d 308, 434 N.Y.S.2d 166, 414 N.E.2d 666 (1980) *Gokey v. Castine*, 163 A.D.2d 709, 558 N.Y.S.2d 308, 309 (3d Dept. 1990). From the record it appears that some sort of removable guard was available at times. However, it is not clear whether the guard merely inhibited ink splashing or served as a safety device to protect the machine's operators. What purpose the guard served and the identity of the installer are matters that cannot be decided on a motion to dismiss on this record. *See Derdiarian*, 51 N.Y.2d at 315, 434 N.Y.S.2d 166, 414 N.E.2d 666; *Voss*, 59 N.Y.2d at 106, 463 N.Y.S.2d 398, 450 N.E.2d 204.

 Defendants argue that Copysystems has become the manufacturer of the machine because of the changes it made to the machine. Pursuant to New York law, a manufacturer will escape liability only if "there is a subsequent modification which substantially alters the product and is the proximate cause of plaintiff's injuries." *Robinson v. Reed–Prentice Div. of Package Machinery Co.*, 49 N.Y.2d 471, 426 N.Y.S.2d 717, 403 N.E.2d 440 (1980). The cases cited by defendant support plaintiffs' argument that nothing less than a modification to a product's safety features will relieve the manufacturer of liability for a faulty design. For example, in *Robinson v. Reed–Prentice*, the employer modified a plastic molding machine by cutting a 6 by 14 inch hole in the safety gate which otherwise would have prevented the injuries sustained. 49 N.Y.2d 471, 477, 426 N.Y.S.2d 717, 719, 403 N.E.2d 440, 441–42 (1980); *see also Wood v. Peabody Int'l. Corp.*, 187 A.D.2d 824, 589 N.Y.S.2d 960, 961 (3d Dept. 1992) (modification entailed removal of "safety latches" on garbage transport trailer); *Aviles v. Eagle Picher Corp.*, 167 A.D.2d 495, 562 N.Y.S.2d 167 (2d Dept.1990) (modifica-

tion was removal of manufacturer-installed safety guards on bread conveyer); *Frey v. Rockford Safety Equipment Co.*, 154 A.D.2d 899, 546 N.Y.S.2d 54, 55 (4th Dept.1989) ("[P]laintiff's injury was the direct result of her employer's installation of a switch that allowed the press to be operated without the [manufacturer-installed] barrier device"); *Lovelace v. Ametek, Inc.*, 111 A.D.2d 953, 490 N.Y.S.2d 49, 50 (3d Dept.1985) ("It is undisputed that on the occasion of plaintiff's injury, none of the three safety devices designed to protect those running the [machine] were operative and, further, that but for want of those devices, the accident would not have occurred").

Defendants contend that by virtue of the changes made by Copysystems, Copysystems became the de facto manufacturer of the rotary coater machine or, in the alternative, that those changes were the proximate cause of plaintiffs' injuries. Neither contention is undisputed on this record. According to the evidence submitted by the Kerns, the changes in the machine had nothing to do with safety and did not expose the nip-point or otherwise affect the safety of the rotary coater machine. Based on the disputed material facts, summary judgment on this aspect of the negligence claim is precluded.

As for Wheelabrator's final contention that the manufacturer's original design could not be the proximate cause of plaintiffs' injuries because Copysystems made a safety guard available to the machine operators, there is a factual dispute surrounding this safety guard, including whether or not it was available to Kern. Summary judgment on the issue of proximate cause cannot be granted on this record.

The negligence claim therefore survives the motion for summary judgment.

### III. *Copysystems' Liability*

 "As a general rule, when an employee is injured in the course of his employ-

ment, his sole remedy against his employer lies in his entitlement to a recovery under the Workers' Compensation Law." *Billy v. Consolidated Mach. Tool Corp.*, 51 N.Y.2d 152, 156, 432 N.Y.S.2d 879, 412 N.E.2d 934, *rearg. denied* 52 N.Y.2d 829, 437 N.Y.S.2d 1030, 418 N.E.2d 694 (1980); *see also Olsson v. Nyack Hosp.*, 193 A.D.2d 1006, 598 N.Y.S.2d 348, 349 (3d Dept.1993); N.Y. Worker's Compensation Law 11 and 29 (McKinney 1992). Nevertheless, it is well settled that the policies underlying the Worker's Compensation Law do not preclude an employee from maintaining a common-law action against a third-party tort-feasor who may be responsible, in whole or in part, for his injuries. *Billy*, 51 N.Y.2d at 160, 432 N.Y.S.2d 879, 412 N.E.2d 934; *Coley v. Arnot Ogden Memorial Hosp.*, 107 A.D.2d 67, 485 N.Y.S.2d 876, 878 (3d Dept.1985). In addition, in *Billy*, 51 N.Y.2d at 160, 432 N.Y.S.2d 879, 412 N.E.2d 934, the New York Court of Appeals, carved out a limited exception to the exclusivity provision of the Worker's Compensation Law where an employer's liability, if any, arises solely from its independent assumption, by contract or operation of law, of the obligations and liabilities of a third-party so as to deprive the employee of a viable third-party tort-feasor. 51 N.Y.2d at 160–62, 432 N.Y.S.2d 879, 412 N.E.2d 934.

Copysystems may only be subject to a common law action under this "Billy" exception if two conditions are satisfied; 1) its potential liability must arise solely from its assuming liability by contract or operation of law; and 2) this assumption must deprive the Kerns of a viable third-party tort-feasor defendant.

Copysystems' potential liability for Kern's injuries arises out of its express agreement to assure all liabilities relating to Wheelabrator's copy products division.[1] Copysystems' liability, if any, is solely attributable to its independent assumption, "by contract or operation of law," of a third-party's liability.

---

1. The liability is not assumed because Copysystems is a mere continuation of Frye Manufacturing. The merger between several companies resulting in Wheelabrator–Frye ended the chain that could arguably have been described as mere continuations. Under New York law, the mere continuation exception refers to corporate reorganization ... where only one corporation survives the transaction; the predecessor corporation must be extinguished. *Mitchell v. Suburban Propane Gas Co.*, 182 A.D.2d 934, 581 N.Y.S.2d 927, 928 (3d Dept.1992).

*Billy,* 51 N.Y.2d at 156, 432 N.Y.S.2d at 881, 412 N.E.2d at 937.

These facts also support the proposition that Copysystems' assumption of liability left the plaintiffs without the means to hold the predecessor, Wheelabrator, directly accountable as a third-party tort-feasor for the initial design of the coating machine. *See Billy,* 51 N.Y.2d at 161, 432 N.Y.S.2d at 884, 412 N.E.2d at 939–40. The limited exception to the exclusivity provision of the Workers' Compensation Law carved out by the New York Court of Appeals in *Billy* applies where the employer's assumption of liability deprives the employee of a cause of action against a potential third-party tortfeasor. *See Lynn v. McDonnell Douglas Corp.,* 134 A.D.2d 328, 520 N.Y.S.2d 804, 806 (2d Dept. 1987).

While neither party has cited cases to support the application of the *Billy* exception to this circumstance, namely where the plaintiff is deprived of a cause of action due to the assumption of the third party tortfeasor's liability by agreement, as is the case here, the extension seems an appropriate reading of *Billy.* As a result, the claim of negligence remains as against Copysystems.

For the reasons discussed above, the motion to dismiss the warranty and products liability claims are granted, the motion for summary judgment on the negligence claim is denied as against Copysystems. The motion for summary judgment for the claims against Wheelabrator is granted, in so far as its liability relating to this claim were assumed by Copysystems. The issues surviving this motion are: 1) whether the coater machine, as designed more than twenty years before the accident giving rise to this action occurred, was the proximate cause of Kern's injuries; and 2) whether Copysystems became the manufacturer because of modifications it made that substantially modified the safety features of the machine.

It is so ordered.